# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
)
**SUPERIOR FIBRE PRODUCTS, INC.,** *et al.,*      )
)
**Plaintiffs,**                                   )
)
**v.**                                            )          **Civil Action No. 15-0821 (ESH)**
)
**UNITED STATES DEPARTMENT OF**                   )
**THE TREASURY,** *et al.*,                       )
)
**Defendants.**                                   )
_____)

## <u>MEMORANDUM OPINION</u>

Plaintiffs Superior Fibre Products, Inc. (New York) ("Superior Fibre-New York"),

Superior Fibre Products, Inc. (Ontario, Canada) ("Superior Fibre-Canada"), and Gregory Gordon

Bertram bring this action against the United States Department of the Treasury ("Treasury

Department"), Lee Myung Hee Ambrocio ("Ambrocio"), a "purported employee of the Treasury

Department," and John Does 1-10 ("Doe defendants"), unknown persons "who may be involved,

either as employees within the Treasury Department or the agents outside of it." They claim

they are entitled to replacement of an allegedly lost "Treasury instrument" and damages for

misrepresentation due to actions allegedly taken by Ambrocio and/or the Doe defendants.

Before the Court are (1) defendants' motion to dismiss or, in the alternative, for summary

judgment (*see* Defs.' Mot. to Dismiss or, in the Alternative, for Summary Judgment, Oct. 1, 2015

[ECF No. 17] ("Defs.' Mot.")); and (2) plaintiffs' cross-motion for leave to serve Ambrocio by

publication (*see* Pls.' Mot. for Leave to Serve Defendant Ambrocio by Publication, Oct. 30, 2015

[ECF No. 23] ("Pl.'s Mot."). For the reasons stated herein, defendants' motion to dismiss or for

summary judgment will be granted, and plaintiffs' motion to serve Ambrocio by publication will be denied.  In addition, any other individual capacity claims against Ambrocio and the Doe defendants will be dismissed without prejudice for insufficient service of process.

## BACKGROUND

The facts, as alleged in the complaint, are as follows.  Superior Fibre-Canada is a family-owned Canadian corporation that manufactures and markets metallic products used for building construction and other purposes.  (Compl. ¶ 11.)  Bertram is the owner and sole shareholder of Superior Fibre-Canada, which in turn owns Superior Fibre-New York.  In 1981, Bertram met Melville H. Leck, and they "became partners in various ventures."  (Compl. ¶ 12.)  As "collateral" for some of these ventures, they used a "Treasury instrument" bearing the number "121.6652897170235," which Leck had acquired in 1981 for $10,000.  (Compl. ¶¶13-14.)

Leck died in September 2007.  (Compl. ¶ 17.)  Upon Leck's death, the entitlement to the Treasury instrument "passed" to Bertram, "outside of [Leck's] estate," and Bertram became "entitled to its redemption."[1]  (Compl. ¶ 17.)  According to the complaint, Bertram spoke to Leck's son (Harold Leck) at Leck's funeral, and he "confirmed knowing of Bertram's entitlement to the Treasury instrument."  (Compl. ¶ 17.)  Leck's papers were stored at his son's home, but those records were destroyed by a flood in 2009.  (Compl. ¶¶ 18-19.)

The complaint alleges that since 2009 Bertram has undertaken "various efforts to reinstate" the Treasury instrument, but that "he has been unsuccessful."  (Compl. ¶ 20.)  One

---

[1] The complaint also alleges that in 2000, or thereabout, "Leck transferred the Treasury instrument to Bertram and/or Superior Fibre-Canada" (*see* Compl. ¶ 15), and that on July 7, 2005, or thereabout, "Bertram and Leck entered into a 60/40 partnership agreement with regard to the entitlement to the Treasury instrument" (*see* Compl. ¶ 16), but these earlier transactions would appear to be irrelevant in light of the alleged transfer at Leck's death in 2007.

such effort involved "several nationals of Nigeria," who communicated with Bertram "via Internet," "alleged that they were in privity with the Treasury Department," and "offered their services in recovery of the Treasury instrument."  (Compl. ¶ 21.)  These individuals provided Bertram with electronic copies of letters addressed to the United Bank for Africa (Nigeria), "cc'd" to Bertram, and signed by "Lee Myung Hee Ambrocio" on what appeared to be Treasury Department letterhead, along with a copy of what was represented to be Ambrocio's Treasury Department identification card.  (Compl. ¶¶ 21-24, 26.)  These letters proposed that there be a meeting in Washington, D.C. with the Nigerians, Bertram and officials from the Treasury Department to address Bertram's claim to the allegedly lost Treasury instrument.  (Compl. ¶¶ 21-24.)  "Against the background of such letters, the United Bank of Africa sought advance payments from Bertram and others, purportedly as the facilitating party of agents for purposes of arranging for the negotiations with the officers of the Treasury Department in Washington, D.C. and for the ultimate recovery of the assets associated with the . . . Treasury instrument."  (Compl. ¶ 25.)  The complaint does not specify the amount of any payments that were made.

Each time the date of a meeting approached, it was postponed (Compl. ¶ 24), and plaintiffs now believe that "there is a likelihood that those letters were not legitimate."  (Compl. ¶ 40.)  Nonetheless, the complaint alleges that "[e]ven if the six letters and the I.D. were unauthorized, it is doubtful that all that documentation were created without any connection to the Treasury Department and its insiders."  (Compl. ¶ 43.)

To date, plaintiffs "have been unable to receive a duplicate of the . . . Treasury instrument . . . and have been consequently not in a position to redeem it."  (Comp. ¶ 29.)

Based on the above allegations, plaintiffs filed the pending action on June 3, 2015.  Their complaint includes three claims.  Count I asks the Court to order the Treasury Department to

"issue a duplicate" of the allegedly lost or destroyed Treasury instrument.  Count II seeks a declaratory judgment that plaintiffs are the "lawful owners" of the lost Treasury instrument. Count III seeks damages for misrepresentation, against "at least" Ambrocio, on the ground that plaintiffs were induced by the letters from Ambrocio and the copy of his Treasury Department ID to make payments to the United Bank of Africa in exchange for their unfulfilled promise to help plaintiffs recover the allegedly lost Treasury instrument.

Defendants have filed a motion to dismiss or for summary judgment, on behalf of the Treasury Department and also on behalf of Ambrocio and the Doe defendants "to the extent plaintiffs allege that any of those individuals are federal officials, employees, or agents" acting in their "official capacities," which contends that the complaint should be dismissed for lack of subject matter jurisdiction, improper service of process, and failure to state a claim upon which relief can be granted, *see* Fed. R. Civ. P. 12(b)(1), (5) & (6), or, in the alternative, that defendants are entitled to summary judgment.  That motion also points out that to the extent Ambrocio and the Doe defendants are being sued in their individual capacities, neither has been served in accordance with Federal Rule of Civil Procedure 4(e) and that the time to effect service under Federal Rule of Civil Procedure 4(m) has expired.  Plaintiffs have filed an opposition to defendants' motion and a motion for leave to serve Ambrocio by publication.  Both motions are now ripe.

## DISCUSSION

## I.   COUNT I: "REINSTATEMENT OF LOST COMMERCIAL PAPER"

Count I of the complaint is labeled as a claim for "reinstatement of lost commercial paper."  It is brought against the Treasury Department, and it seeks an order from the Court directing the Treasury Department to issue plaintiffs a duplicate of the allegedly lost or destroyed

Treasury instrument.  Count I fails to state a claim upon which relief can be granted.[2]  *See* Fed. R. Civ. P. 12(b)(6).  In the alternative, the Treasury Department is entitled to summary judgment. *See* Fed. R. Civ. P. 56.

### 1.    Failure to State a Claim

The Court will consider first whether Count I states a claim upon which relief can be granted.

In order to state a claim against a federal agency, a plaintiff must have a viable "cause of action" – a basis for "invok[ing] the power of the court to redress the violations of law that [plaintiff] claims the [federal agency] has committed."  S*ee Trudeau v. Fed. Trade Comm'n,* 456 F.3d 178, 188 (D.C. Cir. 2006); s*ee Holistic Candlers & Consumers Ass'n v. Food & Drug Admin.*, 664 F.3d 940, 943 (D.C. Cir. 2012) (plaintiffs "cannot satisfy another requirement for maintaining this suit: a cause of action").  The recognized routes for obtaining equitable review of an agency action are: (1) under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, which "'suppl[ies] a generic cause of action in favor of persons aggrieved by agency action,'" *Trudeau*, 456 F.3d at 188 (quoting *Md. Dep't of Human Res. v. Dep't of Health &*

---

[2] Defendants' argument that the Court lacks subject matter jurisdiction over this Count (and Count II) is without merit.  The Court has federal question jurisdiction over claims against a federal agency, *see* 28 U.S.C. § 1331, and section 702 of the Administrative Procedure Act ("APA") provides the necessary waiver of sovereign immunity.  *See* 5 U.S.C. § 702 ("A person suffering legal wrong because of any agency action, or adversely affected or aggrieved by such action within the meaning of any relevant statute, shall be entitled to judicial review thereof.  An action in a court of the United States *seeking relief other than money damages* and stating a claim that an agency or officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein denied on the ground that it is against the United States or that the United States is an indispensable party."); *see Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 186-87 (D.C. Cir. 2006) (waiver of sovereign immunity in § 702 of the APA applies to any claim for equitable relief against a federal agency, not just APA claims).

*Human Servs.*, 763 F.2d 1441, 1445 n.1 (D.C. Cir. 1985)); (2) under another federal statute that

specifically provides for judicial review, *see, e.g.*, 7 U.S.C. § 136a-1(m) (authorizing judicial

review under Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA")); (3) under the

United States Constitution, *see Trudeau,* 456 F.3d at 190 ("the court's power to enjoin

unconstitutional acts by the government . . . is inherent in the Constitution itself"); or (4) under

the narrow doctrine of "non-statutory review" which allows judicial review "to determine

whether the agency has acted 'ultra vires'—that is, whether it has 'exceeded its statutory

authority.'" *Mittleman v. Postal Regulatory Comm'n*, 757 F.3d 300, 307 (D.C. Cir. 2014)

(quoting *Aid Ass'n for Lutherans v. U.S. Postal Serv.,* 321 F.3d 1166, 1173 (D.C. Cir. 2003));

*Trudeau,* 456 F.3d at 190 ("'judicial review is available when an agency acts *ultra vires,*' even if

a statutory cause of action is lacking.").

   Absent a viable cause of action, a court must dismiss for failure to state a claim.  S*ee*

*Trudeau,* 456 F.3d at 188.  Here, plaintiffs do not expressly identify a cause of action that would

allow them to bring their claim for "reinstatement of lost commercial paper," and it is clear from

the allegations of the complaint that none of the recognized routes for challenging agency action

(or inaction) are applicable.  Plaintiffs do not allege a "final agency action," as would be required

to obtain review under the APA.  They do not identify any other statute that authorizes judicial

review of an alleged refusal by the Treasury Department to reissue an allegedly lost Treasury

instrument, and the Court has found none.[3]  They do not expressly allege and the alleged facts do

_____

[3] There is no question that the Treasury Department has the power to reissue a lost Treasury
instrument and, indeed, it has enacted regulations setting forth the circumstances under which it
will do so.  *See* 31 CFR § 306.111.  Had plaintiffs sought reissuance of the allegedly lost
Treasury instrument pursuant to the Treasury Department regulations, and had that request been
denied, arguably there could have been a "final agency action" reviewable under § 704 of the
APA.  *See Holistic Candlers & Consumers Ass'n v. Food & Drug Admin.*, 664 F.3d 940, 943

not suggest a violation of the Constitution.  Finally, they do not expressly allege and the alleged

facts do not suggest that the Treasury Department has, in any way, "exceeded the scope of its

statutory authority."   Accordingly, the Court concludes that there is no cause of action that

allows these plaintiffs to bring a claim for "reinstatement of lost commercial paper" against the

Treasury Department.  Absent a viable cause of action, Count I of the complaint must be

dismissed for failure to state a claim.[4]

### 2.    Summary Judgment

In the alternative, the Court will consider whether the Treasury Department is entitled to

summary judgment on Count I.[5]

"A party may move for summary judgment, identifying each claim or defense -- or the

part of each claim or defense -- on which summary judgment is sought.  The court shall grant

summary judgment if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law."  *See* Fed. R. Civ. P. 56(a).  "A

moving party is entitled to summary judgment if the nonmoving party 'fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that

---

(D.C. Cir. 2012) ("The APA, however, only provides a right to judicial review of 'final agency action for which there is no other adequate remedy in a court.'" (quoting 5 U.S.C. § 704)).  Even though it may appear obvious that any such request by plaintiffs would have been denied, that is immaterial to the question whether a cause of action distinct from the APA exists.

[4] Having reached this conclusion, it is immaterial that plaintiffs did not properly serve the Treasury Department.  *See* Fed. R. Civ. P. 4(i)(1)B) & (2) (proper service on federal agency requires, in addition to service on the federal agency and the United States Attorney, that a copy of summons and complaint be sent to the Attorney General).

[5] Plaintiffs' suggestion that the Treasury Department's motion for summary judgment should be denied simply due the timing of its filing ignores the plain language of Rule 56 which provides that: "Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery."  *See* Fed. R. Civ. P. 56(b).

party will bear the burden of proof at trial.'" *Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 295 (D.C. Cir. 2015) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  If the party moving for summary judgment "does not have the trial burden of production," it "may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact.'" *Grimes v. District of Columbia*, 794 F.3d 83, 93 (D.C. Cir. 2015) (quoting Fed. R. Civ. P. 56 Advisory Committee Note to the 2010 Amendments).  In such a situation, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial, and "the moving party is entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. at 18.

To prevail on Count I plaintiffs would have to prove, at a minimum, that in 1981 Melvin Leck purchased an identifiable Treasury instrument for $10,000 and that such instrument was transferred to plaintiffs (via Bertram) upon Leck's death in 2007.  The material undisputed facts, though, establish that plaintiffs will not be able to meet their burden of proof on these elements of their claim.  These facts include:

(1) Plaintiffs "have no ability to produce a copy" of the allegedly lost Treasury instrument.  (*See* Compl. ¶ 31.)

(2) Plaintiffs have no records showing the purchase of the allegedly lost Treasury instrument by Melvin Leck or its alleged transfer to Bertram.  (*See* Compl. ¶¶ 13-19; Decl. of Gregory Bertram ¶¶ 4, 6, 10.)

(3) The number associated with the allegedly lost Treasury instrument that plaintiffs provided in the complaint is not a number that is representative of any valid Treasury security.

(*See* Decl. of Sherry A. Elder ¶ 6; *see also* Def.'s Mot., Ex. A (7/9/2015 letter from Treasury Bureau of Fiscal Services to plaintiffs' counsel "in response to inquiry regarding information about United States Treasury Securities belonging to Melville H. Leck, Superior Fibre Products Inc., or Gregory Gordon Bertram," stating "The Treasury instrument number you provided is not one of our numbers")); Pls.' Opp'n at 2 ("The identification number, No. 121.6652897170325, is, on information and belief, attributed by a financial institution authorized to sell U.S. Treasury instruments in Canada."); Betram Decl. ¶ 5 ("By way of explanation, the identification No. 121.6652897170325 did not necessarily refer to the identification used by U.S. Treasury, but rather the internal identification of a financial institution that had sold it to Leck. I am making herewith a correction, to avoid any ambiguity in the Verified Complaint as to whose identification that number was. Summing up numerous conversations with Leck and analyzing my recollections against the submission of the U.S. Treasury, I now believe that this number was used by a financial institution that was authorized to resell U.S. Treasury instruments in Canada (for example Royal Bank of Canada, among other banking and brokerage institutions.").

(4) Bertram submitted several inquiries to the Treasury Department asking whether they had records associated with particular Taxpayer Identification Numbers, and they did not.  (*See* Def.'s Mot., Ex. B (10/7/2013 letter from Treasury Bureau of Fiscal Services to Bertram; Def.'s Mot, Ex. C (same).)

(5) The Bureau of Public Debt does not maintain records of Treasury securities held in the commercial sector through financial institutions or brokerage firms; rather, those records are held by the brokerage firm or commercial bank through which the security was purchased.  (*See* Def.'s Mot., Exs. A & B.)

(6) The Treasury Department does not replace securities purchased on the secondary market.  (Supp. Decl. of Sherry Elder) ¶14.)

(7) The only evidence that the allegedly lost Treasury instrument existed or was transferred to Bertram is based, in part, on hearsay contained in Bertram's declaration, which states that Leck "told" him in 1981 that he had acquired the Treasury instrument for $10,000 and then states without elaboration that it passed to Bertram outside of Leck's estate.  (Bertram Decl. ¶¶ 3, 4, 10.)

Bertram's declaration, in the absence of any competent evidence to support his claim or any claim by plaintiffs that other evidence might exist, would not be sufficient to establish the existence and value of the allegedly lost Treasury instrument or that it was transferred from Leck to Bertram.[6]  Plaintiffs argue that it is "premature" for the Court to rule on the motion for summary judgment because they have had "no opportunity to take discovery" and, moreover, they "are ready and willing to come up with their own witnesses to be questioned with live testimony" and that they "should have their day in court."  (*See* Pls.' Opp. at 8-9.)  Rule 56, however, makes it clear that to avoid summary judgment on these grounds a non-movant must "show[] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition."  *See* Fed. R. Civ. P. 56(d) ("If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.")  Plaintiffs' vague

---

[6] It is not necessary to determine whether Ambrocio or someone else was impersonating a Treasury Department official in order to reach this conclusion.

and unsupported assertions ignore the requirements of Rule 56, and, in any event, the Court

cannot conceive of any discovery that would alter its conclusion.

Accordingly, as plaintiffs cannot meet their burden as to several essential elements of

Count I, defendants are entitled to summary judgment on this count.

## II.    COUNT II:  DECLARATORY JUDGMENT

In Count II of the complaint, plaintiffs allege that they "are entitled to seek a declaratory

judgment of this Court that Bertram/Superior Fibre-Canada were the lawful assignees and now

the lawful owners of the Treasury instrument, No. 121.6652897170325." (Compl. ¶ 37.)  The

Declaratory Judgment Act provides, in relevant part, that

> [i]n a case of actual controversy within its jurisdiction, ... any court of the United
> States, upon the filing of an appropriate pleading, may declare the rights and other
> legal relations of any interested party seeking such declaration, whether or not
> further relief is or could be sought.

28 U.S.C. § 2201(a).  The Declaratory Judgment Act, however, is "'procedural only.'"  *Skelly*

*Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950) (quoting *Aetna Life Ins. Co. of*

*Hartford, Conn. v. Haworth*, 300 U.S. 227, 240(1937)).  It "presupposes the existence of a

judicially remediable right."  *Schilling v. Rogers*, 363 U.S. 666, 677 (1960); *see also Ali v.*

*Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011); *C & E Servs., Inc. of Washington v. D.C. Water &*

*Sewer Auth.,* 310 F.3d 197, 201 (D.C. Cir. 2002).  Here, as the Court has concluded that

plaintiffs have not alleged a cognizable cause of action against the Treasury Department, it

necessarily follows that they have no basis upon which to seek declaratory relief, and, therefore,

Count II must be dismissed for failure to state a claim.  In the alternative, defendants are entitled

to summary judgment on Count II for the same reasons they are entitled to summary judgment

on Count I.

III.     **COUNT III: MISREPRESENTATION**

Count III is a claim for damages based on the alleged misrepresentations in the Ambrocio

letters, which induced plaintiffs to make payments to the United Bank of Africa for promised,

but not provided, assistance in obtaining a replacement copy of the supposedly lost Treasury

instrument.  The complaint is unclear as to which defendants this claim applies.  (*See* Compl. ¶

45 (claim is "at a mimimum" against Ambrocio).)  It is also unclear whether plaintiffs are

proceeding against Ambrocio and the Doe defendants in their official or individual capacities, or

both.  Accordingly, the Court will consider the viability of the misrepresentation claim as to each

defendant and as to all possible configurations.

   A.    **Misrepresentation Claim Against Treasury Department or Against**
          **Ambrocio and the Doe Defendants in their "Official Capacities"**

The Court will consider first whether plaintiffs have a viable claim for misrepresentation

against the Treasury Department or against the individual defendants in their "official

capacities."  As a general rule, the United States, federal agencies, and federal employees acting

in their official capacities are protected from suit by the doctrine of sovereign immunity, unless

the United States has expressly waived that immunity.  *See FDIC v. Meyer,* 510 U.S. 471, 475

(1994); *Block v. North Dakota,* 461 U.S. 273, 287 (1983) ("The basic rule of federal sovereign

immunity is that the United States cannot be sued at all without the consent of Congress");

*Albrecht v. Comm. on Employee Benefits of Fed. Reserve Employee Benefits Sys.,* 357 F.3d 62,

67 (D.C. Cir. 2004) (sovereign immunity applies to federal agencies and instrumentalities);

*Clark v. Library of Congress,* 750 F.2d 89, 102–04 (D.C. Cir. 1984) (sovereign immunity applies

to federal employees acting in their official capacity).  Absent any waiver, such claims must be

dismissed with prejudice for lack of subject matter jurisdiction.  *See Sloan v. Dep't of Hous. and

Urban Dev.,* 236 F.3d 756, 759 (D.C. Cir. 2001); *see also Menifee v. U.S. Dep't of the Interior,*

931 F. Supp. 2d 149, 162 (D.D.C. 2013) (dismissing tort claims with prejudice "because sovereign immunity is not waived as to those torts"); *Nations v. United States*, No. 14-cv-00618, 2015 WL 1704195, at *2 (D.D.C. Apr. 15, 2015) (dismissing with prejudice claim that is "clearly beyond the scope of the waiver of sovereign immunity found in the FTCA").

No waiver of sovereign immunity covers plaintiffs' claim for misrepresentation against the Treasury Department or against the individual defendants in their official capacities.  Nor could the United States be substituted as a defendant under the Federal Tort Claims Act, which waives the sovereign immunity of the United States (but not the immunity of its agencies or employees) for certain state law torts committed by federal employees "acting within the scope of their office or employment," 28 U.S.C. § 1346(b)(1)[7]; *see also Benoit v. U.S. Dep't of Agric.*, 608 F.3d 17, 20 (D.C. Cir. 2010) ("suits for damages against the United States under the common law must be brought pursuant to the limited waiver of sovereign immunity in the FTCA"), because claims for misrepresentation are expressly excluded from the FTCA waiver. *See* 28 U.S.C. § 2680 ("section 1346(b) . . . shall not apply to . . . . (h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights").  Accordingly, the Court

---

[7] Section 1346(b)(1) provides:

> Subject to the provisions of chapter 171 of this title, the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

lacks jurisdiction over plaintiffs' misrepresentation claim against the Treasury Department and against the individual defendants in their official capacities and those claims must be dismissed with prejudice.

**B.      Misrepresentation Claims Against Ambrocio and the Doe Defendants in their Individual Capacities**

The Court will consider next whether plaintiffs can proceed on a misrepresentation claim against Ambrocio or the Doe defendants in their individual capacities.  They cannot, although the reasons for that conclusion differ depending on whether the challenged actions would fall within the scope of their official duties as purported federal employees.

**1.      Claim Based on Actions Within Scope of Purported Federal Employment**

If plaintiffs are bringing an individual capacity claim against either Ambrocio or the Doe defendants based on actions that would fall within the scope of their official duties as purported federal employees, they are absolutely immune from personal liability under "The Federal Employees Liability Reform and Tort Compensation Act of 1988," commonly known as the Westfall Act.  *See* 28 U.S.C. § 2679(b)(1)); *see Osborn v. Haley,* 549 U.S. 225, 229 (2007) ("The Westfall Act[] accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties.")  Accordingly, any such claim will be dismissed.[8]

_____

[8] Under the Westfall Act, upon certification by the Attorney General "that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant."  28 U.S.C. § 2679(d)(1).  Thus, when a federal employee is named in a tort suit, the Attorney General or his designee may certify that the employee was "acting within the scope of his office or employment at the time of the incident out of which the claim arose." *Id.*; *see also* 28 C.F.R. § 15.4. Upon the Attorney General's certification, the federal employee is dismissed

## 2.      Claim Based on Actions Not Within Scope of Purported Federal Employment

The remaining possible permutation of plaintiffs' misrepresentation claim is that they are seeking damages from Ambrocio or the Doe defendants in their individual capacities for actions that were not within the scope of their official duties as purported federal employees, or, in the case of Ambrocio, that for his actions even if he is not and never was (as may well be the case) a federal employee.[9]  The problem for plaintiffs, though, is that they have not effected proper service on either Ambrocio or the Doe defendants, *see* Fed. R. Civ. P 4(e), and the time to accomplish service has expired, *see* Fed. R. Civ. P. 4(m).

In order to bring an individual capacity claim against Ambrocio or the Doe defendants, plaintiffs must serve the summons and complaint in accordance with Federal Rule of Civil Procedure 4(e).  Rule 4(e) provides that an individual "may be served in a judicial district of the United States" by:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:

_____

from the case and the United States is substituted as the defendant in place of the employee. 28 U.S.C. § 2679(d)(1). Thereafter, the suit is governed by the Federal Tort Claims Act ("FTCA") and is subject to all of the FTCA's exceptions for actions in which the Government has not waived sovereign immunity. *Osborn*, 549 U.S. at 230. When one of these exceptions applies, the Attorney General's certification converts the tort suit into a FTCA action over which the federal court lacks subject matter jurisdiction and has the effect of altogether barring plaintiff's case. *Wuterich v. Murtha*, 562 F.3d 375, 380 (D.C. Cir. 2009).  The Court notes that had such a certification been filed in the present case, the claim would have converted into an FTCA claim against the United States and then been dismissed for lack of subject matter jurisdiction for the reasons previously discussed.

[9] The Doe defendants are identified and sued only in their capacity as federal employees or agents.  (Compl. ¶ 7.)

> (A) delivering a copy of the summons and of the complaint to the individual personally;
>
> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>
> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).  District of Columbia law, incorporated via Rule 4(e)(1), provides that service on an individual "may be effected by mailing a copy of the summons, complaint and initial order to the person to be served by registered or certified mail, return receipt requested." D.C. Super. Ct. R. Civ. P. 4(c)(3).  In addition, Federal Rule of Civil Procedure 4(m) provides that:

> If service of summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).[10]

Plaintiffs have yet to serve either Ambrocio or the Doe defendants in accordance with Rule 4(e).  Plaintiffs tried to deliver a copy of the complaint and summons addressed to Ambrocio at the main office of the United States Department of the Treasury, where it was signed for by a mail clerk (*see* Supp. Proof of Service, Oct. 23, 2015 [ECF No. 22]), but that is not an authorized means of service, either under Rule 4(e)(2) or under District of Columbia law as incorporated via Rule 4(e)(1).  As for the alleged Doe defendants, they remain unidentified and thus cannot be served.

---

[10] Rule 4(m) was amended, effective December 1, 2015, to reduce the time allowed for service from 120 days to 90 days.

The 120 day-period to effect service on Ambrocio or the Doe defendants expired on October 1, 2016.  The only remaining question for the Court is, therefore, whether to dismiss without prejudice for insufficient service of process or to extend the time for service.  *See* Fed. R. Civ. P. 4(m) & 12(b)(5).

Where there is "no reasonable prospect of effecting service," dismissal without prejudice is the appropriate course.  *Compare Nat'l Expositions, Inc. v. DuBois*, 97 F.R.D. 400, 404 (W.D. Pa. 1983) (dismissing claims for lack of service because "the present record contains no fact which might support a reasonable prospect of the Plaintiffs being able to serve [the Defendants] adequately with process") *with Novak v. World Bank*, 703 F.2d 1305, 1310 (D.C. Cir. 1983) ("dismissal is not appropriate when there exists a reasonable prospect that service can be obtained").  That is the case here.

As to Ambrocio, plaintiffs seek to remedy the defects in service by asking the Court to issue an order allowing "service by publication."  As service by publication is not authorized under Rule 4(e)(2), the availability of the relief plaintiffs seek depends on whether service by publication is an allowed method of service under District of Columbia law.  *See* 4B Fed. Prac. & Proc. Civ. § 1115 (4th ed.) ("If state law authorizes service by publication, use of that procedure is permissible under Rule 4(e)(1).").  Although service by publication in the District of Columbia is permitted under certain limited circumstances, those circumstances are not present here.  *See* D.C. Code § 13-366[11]; *Fox v. Ginsburg*, 785 A.2d 660, 662 (D.C. 2001) ("[N]otice by

---

[11] § 13-336 provides:

> Service by publication on nonresidents, absent defendants, and unknown heirs or devisees.

> (a) In actions specified by subsection (b) of this section, publication may be substituted for personal service of process upon a defendant who cannot be found

publication, being in derogation of the common law, can be availed of only when a statute permits."); *Spevacek v. Wright,* 512 A.2d 1024, 1026, 1027 (D.C.1986) ("statutes purporting to authorize constructive service by publication must be strictly construed").   Nor does District of Columbia law, unlike some other jurisdictions, permit courts to authorize alternative methods of service by court order.[12]  *Cf.* Md. Rule 2-121(c) ("When proof is made by affidavit that good faith efforts to serve the defendant pursuant to section (a) of this Rule have not succeeded and

---

and who is shown by affidavit to be a nonresident, or to have been absent from the District for at least six months, or against the unknown heirs or devisees of deceased persons.

(b) This section applies only to:

    (1) actions for partition;
    (2) actions for divorce or annulment;
    (3) actions for child custody under D.C. Official Code, Title 16, Chapter 45;
    (4) actions by attachment;
    (5) actions for foreclosure of mortgages and deeds of trust;
    (6) actions for the establishment of title to real estate by possession;
    (7) actions for the enforcement of mechanics' liens, and other liens against real or personal property within the District; and
    (8) actions that have for their immediate object the enforcement or establishment of any lawful right, claim, or demand to or against any real or personal property within the jurisdiction of the court

D.C. Code Ann. § 13-336.  The case cited by plaintiffs as the example of a court authorizing service by publication, *Harris v. Harris,* 424 F.2d 806, 813 n.12 (D.C. Cir. 1970), related to service expressly allowed under § 13-336.

[12] Even if the Court had the power to order service by publication, it would not do so given the absence of any persuasive evidence that Ambrocio in fact lives or works in the District of Columbia (or that he even exists), so that it is highly unlikely that service by publication would satisfy the requirements of due process.  *See* 4B Fed. Prac. & Proc. Civ. § 1115 (4th ed.) (viability of service by publication is constrained by "constitutional requirements that there be a legitimate basis for asserting personal jurisdiction and that the means used by the plaintiff be reasonably calculated to give the defendant notice of the proceedings and an opportunity to be heard"); *see also World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980) ("Due process requires that the defendant be given adequate notice of the suit.").

that service pursuant to section (b) of this Rule is inapplicable or impracticable, *the court may order any other means of service that it deems appropriate in the circumstances and reasonably calculated to give actual notice*." (emphasis added)).  Accordingly, constrained by Rule 4(e) and District of Columbia law, the Court lacks the power to grant plaintiffs' motion for alternative service by publication.

Other than seeking permission to serve Ambrocio by publication, plaintiffs do not contend that they have any hope of properly serving Ambrocio.  Nor is there any basis for believing that additional time or discovery would alter that situation.  The Treasury Department has already searched all of its databases and determined that Ambrocio was not an employee during the relevant time period (*see* Decl. of Gordon T. Canning III ¶¶ 1-6)), and plaintiffs do not suggest that they have any other means for locating Ambrocio.  Indeed, they have not used the time available for service to make a serious effort at obtaining the information that is necessary to serve him in accordance with Rule 4(e).[13]  Accordingly, the Court will not extend the time to effect service of process on Ambrocio.

As for the Doe defendants, courts "do grant an exception to this rule [setting time limits for service] for 'John Doe,' defendants, but only in situations where the otherwise unavailable identity of the defendant will eventually be made known through discovery." *Newdow v. Roberts*, 603 F.3d 1002, 1010-11 (D.C. Cir. 2010); *see also Hartley v. Wilfert*, 931 F. Supp. 2d 230, 233 (D.D.C. 2013) ("Courts, however, should only allow such actions 'to proceed against a party whose name is unknown if the complaint makes allegations specific enough to permit the identity of the party to be ascertained after reasonable discovery.'" (quoting *Landwehr v. FDIC,*

---

[13] The only effort plaintiffs specifically report was "reviewing the White Pages for Washington D.C. area on his names, in various combinations."  (Pls.' Mot. at 3.)

19

282 F.R.D. 1, 5 (D.D.C. 2010))).  That outcome is unlikely where, as here, the complaint fails to make allegations that are specific enough to ever identify these purported defendants.  *See Landwehr v. F.D.I.C.*, 282 F.R.D. 1, 4-5 (D.D.C. 2010) ("[T]he plaintiffs' failure to identify and serve the 'Doe' defendants did not result primarily from the absence of discovery, but instead, from the absence of any specific allegations of wrongdoing by any such individuals."); *Khan v. Holder*, No. 13-cv-1287, 2015 WL 5730380, at *5 (D.D.C. Sept. 29, 2015) (dismissing where "doubtful that [plaintiff] would be able to determine these defendants' identities through discovery, however, as they are mentioned in only the most cursory fashion, untethered to concrete allegations").

Accordingly, plaintiffs' individual capacity claims against Ambrocio and the Doe defendants to the extent they are based on actions outside the scope of their official duties as purported federal employees will be dismissed without prejudice for insufficient service of process.

## IV.    PLAINTIFFS' CONDITIONAL REQUEST FOR LEAVE TO AMEND

Within their opposition to the motion to dismiss, plaintiffs "conditionally" request leave to amend the complaint should the Court be "inclined to dismiss." (Pls.' Opp'n at 25-26.)  The Court will deny this request.

"Federal Rule of Civil Procedure 15(a) provides that a district court 'should freely give leave [to amend] when justice so requires.'"  *Rollins v. Wackenhut Services, Inc.*, 703 F.3d 122, 130 (D.C. Cir. 2012) (quoting Fed. R. Civ. P. 15(a)(2)).  However, it is well-established in this Circuit that "'a bare request in an opposition to a motion to dismiss -- without any indication of the particular grounds on which amendment is sought -- does not constitute a motion within the contemplation of Rule 15(a).'"  *Rollins*, 703 F.3d at 130 (quoting *Belizan v. Hershon*, 434 F.3d 579, 582 (D.C. Cir. 2006).  Rather, to receive the benefit of the liberal Rule 15(a) standard, it is

necessary to file a motion for leave to amend a complaint accompanied by a copy of the proposed amended complaint.  *See id.*; Local Civil Rule 15.1 ("A motion for leave to file an amended pleading shall be accompanied by an original of the proposed pleading as amended."). Plaintiffs here have not filed a motion to amend their complaint nor submitted a proposed amended complaint for the Court's review.  The Court sees no reason to accept the cursory and "conditional" request in their opposition as a substitute for a properly filed motion.  Moreover, to the extent plaintiffs believed that it was "premature" for them to file a motion for leave to amend before seeing defendants' reply (Pls.' Opp'n at 26), they have no excuse for not filing a motion in the two months that have now elapsed since the reply was filed on November 9, 2015. Finally, even if the Court were to consider plaintiffs' conditional request as a properly filed motion for leave to amend, it would be denied on the ground that any amendment would be futile.  *See In re Interbank Funding Corp. Securities Litigation,* 629 F.3d 213, 218 (D.C. Cir. 2010) ("[A] district court may properly deny a motion to amend if the amended pleading would not survive a motion to dismiss.") (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962) for proposition that " 'futility of amendment' is permissible justification for denying Rule 15(a) motion"); *James Madison Ltd. v. Ludwig,* 82 F.3d 1085, 1099 (D.C. Cir. 1996) ("Courts may deny a motion to amend a complaint as futile ... if the proposed claim would not survive a motion to dismiss.")  The grounds for dismissal in this case would not be affected by additional factual allegations.  Accordingly, the Court denies plaintiffs' conditional request for leave to file an amended complaint.

## CONCLUSION

For the reasons stated above, the Treasury Department's motion to dismiss or, in the alternative, for summary judgment will be granted and plaintiff's motion for leave to serve

21

Ambrocio by publication will be denied.  Any remaining claims against the individual

defendants in their individual capacities will be dismissed without prejudice for insufficient

service of process.  A separate Order accompanies this Memorandum Opinion.

/s/   *Ellen Segal Huvelle*
ELLEN SEGAL HUVELLE
United States District Judge

Date:   January 13, 2016